991 So.2d 1091 (2008)
STATE of Louisiana
v.
Phelix PARKER.
No. 2007 KA 1224.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
Douglas Moreau, District Attorney, Cliff Wilkerson, Assistant District Attorney, Baton Rouge, Lousiana, for State of Louisiana.
Kevin P. Monahan, Baton Rouge, Louisiana, for Defendant/Appellant, Phelix Parker.
Before GAIDRY, McDONALD and McCLENDON, JJ.
McDONALD, J.
The defendant, Phelix Parker, was charged by grand jury indictment # XX-XX-XXXX with one count of aggravated rape, a violation of La. R.S. 14:42, and pleaded not guilty. He moved to enforce a plea agreement. Following a hearing, the trial court granted the motion. The State now appeals, designating one assignment of error. We reverse the granting of the *1092 motion to enforce the plea agreement and remand for further proceedings.

ASSIGNMENT OF ERROR
The trial court erred in granting the defendant's motion to enforce the plea agreement because M.F.'s aggravated rape, which forms the basis of the State's current prosecution of the defendant, was not covered under the plea agreement of December 7, 1988 because the defendant was not a suspect in M.F.'s case at the time the plea agreement was made.

FACTS
M.F.[1] testified at the hearing on the motion to enforce the plea agreement. On April 22, 1986, she reported to the police that she had been raped by a stranger. She did not attend any lineups in connection with the investigation of the offense.
Police investigation of the crime indicated that M.F. was raped at knifepoint in the bathroom of Ward's Washeteria on Plank Road and that the suspected rapist left the bathroom and walked past the victim's mother after she called out the victim's name. The responding police officers put out "a local" on the suspect based on the description given by the victim and her mother.
Thereafter, the defendant appeared in a physical lineup which was presented to approximately fifteen victims of rape and attempted rape offenses occurring between approximately February of 1987 and July of 1987.[2]
On November 12, 1987, the defendant was charged by indictment # XX-XX-XXX, with one count of aggravated rape of T.W. on May 9, 1987 (count I); and one count of aggravated rape of V.J. on June 22, 1987 (count II).
On September 13, 1988, the defendant was charged by indictment # 9-88-530 with one count of attempted aggravated rape on D.J. on July 2, 1987 (count I); one count of attempted aggravated rape on L.J. on June 4, 1987 (count II); one count of attempted aggravated rape on D.W. on June 27, 1987 (count III); and one count of attempted aggravated rape on A.G. on February 14, 1987 (count IV).
On December 7, 1988, the State and the defendant entered into a plea agreement at the Boykin[3] hearing and sentencing on case numbers XX-XX-XXX and 9-88-530. The State set forth the following:
Your Honor, as testimony was adduced at trial,[4] there were other victims who were at the line-up. My understanding is that [the defendant] has not been arrested on any other cases, but if it should come to light that he committed any of the other cases that we are now aware of he would not be prosecuted on those matters.
Thereafter, the State noted the records it had received indicated the defendant was ineligible to be adjudged a third-felony habitual offender but, in the event that it received additional records, it agreed not to pursue third-felony or second-felony habitual offender adjudications against the defendant. Additionally, under case #XX-XX-XXX, the State amended count I to one *1093 count of forcible rape and entered a nolle prosequi on count II. Under case # 9-88-530, the State entered a nolle prosequi on counts III and IV. The State and the defense indicated that they understood that the defendant would be sentenced to twenty years on the two charges of attempted aggravated rape and to twenty years without benefit of parole, probation, or suspension of sentence on the forcible rape charge. In connection with the plea agreement, the defendant pleaded guilty to count I under case # XX-XX-XXX, and counts I and II under case # 9-88-530, and was sentenced in accordance with the plea agreement.
The defendant testified at the hearing on the motion to enforce the plea agreement. He claimed he told his attorneys that he would not enter a plea "in the blind" because he had "other charges out there." He claimed his attorney told him "we'll see about doing it" and then told him, "everything is set." He indicated he had no knowledge of which victims appeared at lineups. He claimed his understanding of the plea agreement set forth in open court was that all the cases that the State was aware of were supposed to have been covered by the agreement.
Attorney Thomas Damico also testified at the hearing on the motion to enforce the plea agreement. He represented the defendant at the time of the plea agreement. He indicated his discussions with the State concerning the plea agreement included allowing the defendant to plead to lesser charges and receive a sentence of a specific amount of years. He also indicated he discussed with the State that the plea bargain would include no prosecution for any of the victims who were at the lineup.
ADA Bernie also testified at the hearing on the motion to enforce the plea agreement. She was the prosecutor in cases # XX-XX-XXX and # 9-88-530 and handled the plea agreement with the defendant. She confirmed that M.F. was not at the lineup referenced at the December 7, 1988 hearing. ADA Bernie claimed she was not aware of M.F.'s rape prior to October of 2005. She claimed that when she stated, "any of the other cases that we are now aware of," she was referencing the victims who had attended the lineup referenced at the December 7, 1988 hearing. She claimed she did not intend to obligate the State of Louisiana not to prosecute M.F.'s rape, and that the present offense was not part of the plea agreement with the defendant.

MOTION TO ENFORCE PLEA AGREEMENT
In its sole assignment of error, the State argues prosecution of the defendant for the aggravated rape of M.F. does not violate the plea bargain with the defendant because the State only agreed not to prosecute the defendant for the aggravated rape/attempted aggravated rape cases in which the State was aware the defendant was a suspect, consisting of only the cases concerning the victims who attended the July 17, 1987 lineup and whose aggravated rapes/attempted aggravated rapes occurred during the period between February of 1987 and July of 1987.
In determining the validity of agreements not to prosecute or of plea agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law. The first step under contract law is to determine whether a contract was formed in the first place through offer and acceptance. See La. C.C. art. 1927. The party demanding performance of a contract has the burden of proving its existence. In the context of plea bargains, *1094 a defendant may demand specific performance of the State's promise if he can show that the parties reached an agreement, that he performed his part of the agreement, and that in doing so, he relinquished a fundamental right. State v. Givens, 99-3518, pp. 14-15 (La.1/17/01), 776 So.2d 443, 455.
The trial court filed detailed written reasons for granting the motion to enforce the plea agreement. The court noted that the defendant was arrested on July 7, 1987, after the police released a drawing of a suspect in a series of rapes that were committed in the late 1980s in the Plank Road area of Baton Rouge. Referencing the motion to suppress hearing, the court noted that Baton Rouge City Police Detective Gardner testified that after the defendant's arrest, he met with investigators, told them that a suspect was in jail who had attacked a woman on the street, and asked them to advise him of cases they were working on in which the suspect, would also be a possible suspect so that a lineup could be arranged. Detective Gardner indicated that the profile to determine which victims participated in the lineup was based on "general description, height, weight, area of town, language used." On July 17, 1987, fifteen women viewed a six-person lineup, including the defendant, at parish prison. Thereafter, on December 7, 1988, in connection with a plea agreement, the defendant pleaded guilty to three felonies and was sentenced to twenty years at hard labor without benefit of parole, probation, or suspension of sentence. On August 22, 2005, the Louisiana State Police Crime Lab notified the Baton Rouge Police Department of a potential DNA match to an allegedly unsolved April 22, 1986 aggravated rape at Ward's Laundromat on Plank Road. The court noted the April 22, 1986, aggravated rape occurred approximately ten months before the aggravated rape of A.G. that the State dismissed as part of the plea agreement.
The court found that both the State and the defendant bargained for and received substantial benefits from the plea agreement. The State obtained three guilty pleas from the defendant without having to go through the expense and trouble of a trial. The defendant reduced his sentencing exposure from two life sentences, plus two hundred years, to twenty years without benefit of parole, probation, or suspension of sentence, received a specified sentence, and received the State's promise that he would not be prosecuted for his involvement in certain other crimes.
The court held that the "we are now aware of language, used by the State in the plea agreement, was "problematic." The court noted the fifteen women that viewed the lineup were presumably all connected in some form or fashion to rapes committed by an individual matching the identification of the defendant. The court noted that the police were aware of the defendant's profile and had a 1986 report matching his identification, which included the correct area of Baton Rouge, the Plank Road area.
The court was also concerned that the defendant would have been unable to know which cases were covered by the agreement not to prosecute. The court noted that neither the defendant nor his attorney knew which rapes were being investigated at the time the fifteen women viewed the lineup, the time frames of those rapes were not in the record, and a time frame was not made part of the plea agreement.
The court rejected the arguments that the plea agreement did not cover the rape of M.F. because M.F. was not at the lineup on July 17, 1987 and because the State did not connect the defendant to the rape of M.F. until the DNA match was discovered. The court noted that the State had as *1095 much information about M.F. as it did relative to the other fifteen women who came to the physical lineup. The court cited the fact that the descriptions of the defendant given by M.F. and her mother on the date of M.F.'s rape were the same type of information used by the police to match the defendant to the fifteen cases where women were brought to the lineup, i.e., sex, age, weight, race, height, and location of the offense. The court posed the rhetorical question, "If the State had information relative to an alleged rape of [A.G.] that allegedly occurred on February 14, 1987, why did they not look at [a] possible connection to a rape that had occurred approximately ten months earlier in the same location by a person matching the same description as they did on fifteen other women?" The court also cited the following colloquy between ADA Bernie and Jerry Gardner during redirect examination at the hearing on the motion to suppress relative to how law enforcement officers first learned the defendant's name:
Q. Did you in good faith think that the person who attacked her (the anonymous caller) was in the same series of crimes that you were investigating in the Plank Road Area?

A. I felt it was a good possibility because of the area that she was attacked and the method.
The court concluded:
The [c]ourt finds that, as a matter of law, that the State did have knowledge of this crime. They had the same knowledge of this crime as they did the other fifteen women who were shown the physical lineup at parish prison. The fact that law enforcement officials may have failed to retrieve the report relative to M.F. is of no moment. The fact is the report existed. It, along with the reports generated by M. Grelt with sex crimes and Officer Fontenot, with crime scene, together contained information matching the profile of [the defendant], the same information that law enforcement used to gather the names of fifteen other women. When the State decided to forgo prosecution of those other cases that they were "now aware of," and at the same time failed to specifically delineate a time frame or other specific information pertaining to the cases it would not prosecute, the recited agreement became vague and ambiguous. The fifteen women who appeared at the line-up were brought there from the investigation of the police, the same investigation that would have lead to the victim M.F. based on the profile the officers used.
The trial court erred in finding that the rape of M.F. was part of the December 7, 1988 plea agreement. The court failed to read the second sentence of the plea agreement in connection with the first sentence of the plea agreement. Each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art.2050. The State purposely began the plea agreement with reference to the victims who were at the July 17, 1987 lineup. The reference to "any other cases" in the second sentence of the plea agreement was clearly a reference to the cases of the victims who were at the lineup. This interpretation is supported by the testimony of both the State and the defendant's own attorney. Thus, the language of the plea agreement, "if it should come to light that he committed any of the other cases that we are now aware of he would not be prosecuted on those matters," excluded from prosecution only the cases of the victims who were at the July 17, 1987 lineup. M.F. was not at the July 17, 1987 lineup. Accordingly, the offense *1096 against her was not part of the December 7, 1988, plea agreement.
This assignment of error has merit.
JUDGMENT GRANTING MOTION TO ENFORCE PLEA AGREEMENT REVERSED; REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] We reference the victims only by their initials. See La. R.S. 46:1844(W).
[2] No one disputes that M.F. was not one of the victims present at the line-up.
[3] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[4] At the hearing on the motion to enforce the plea agreement, East Baton Rouge Parish Assistant District Attorney Sue Bernie (ADA Bernie) testified that she was actually referencing a motion hearing when she referenced "the trial."